UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WILLIAM BAKER,<br><br>Defendant. | 25-cr-387 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.

Defendant William Baker is charged with transmitting threatening interstate communications, in violation of 18 U.S.C. § 875(c), and cyberstalking, in violation of 18 U.S.C. §§ 2261A(2) and 2261(b)(5). See ECF No. 7 ("Indictment"). On January 8, 2026, the Court found Mr. Baker incompetent to stand trial and committed him to the custody of the Attorney General "for treatment in a suitable facility of the Bureau of Prisons ('BOP') for such a reasonable time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future [he] will attain the capacity to permit the parties to proceed to trial." ECF No. 13. Mr. Baker was admitted to the Mental Health Unit of FMC-Butner on April 21, 2026. See ECF No. 22.

Approximately four months later, the Court received a report, dated August 21, 2026, from Dr. Brianna Grover concluding that "there is a substantial probability that [Mr. Baker] would be

restored to competency" with psychotropic medication, which he refused. See August 21, 2026 Report ("Rep.") at 13. Consistent with the four-part test set forth in Sell v. United States, 539 U.S. 166 (2003), for the involuntary administration of antipsychotic drugs, Dr. Grover requested a ruling on whether there are important governmental interests at stake in prosecuting Mr. Baker (the first *Sell* prong), and the Government and defense briefed that issue through October. For the reasons stated below, the Court finds that there are important governmental interests in prosecuting Mr. Baker and directs BOP to promptly submit a further report on the remaining *Sell* factors and a proposed treatment plan, which may then be the subject of further briefing.

## I. Background

### A. Factual Background

On July 27, 2025, Mr. Baker was charged by criminal complaint with transmitting threatening interstate communications, in violation of 18 U.S.C. § 875(c). See ECF No. 1 ("Compl."). As alleged by the complaint, on or about July 23 and July 24, 2025, Mr. Baker sent a series of emails with audio recordings to Victim-1, a former high-ranking official in the Department of Justice. The emails and audio recordings contained violent threats that were directed at Victim-1 but occasionally referenced other high-level current and former Government officials. Among other things, Mr. Baker stated that he would "chop [Victim-1's] fucking head off

when [they] get to Hell"; that "[r]eally somebody needs to be beheaded just like Osama Bin Laden"; that "a torch to [Victim-1] and [another DOJ official's] Faces will get [their] mouths moving towards the Truth"; and that certain officials needed to be "beheaded," "lit on fire," and "g[otten] rid of." Compl. at 1, 3. Some of Mr. Baker's emails copied email addresses associated with various federal district courts. See id. at 3.

On July 29, 2025, Mr. Baker was arrested in Wisconsin and transferred to this District. On August 25, 2025, he was charged by indictment with transmitting threatening interstate communications and with cyberstalking, in violation of 18 U.S.C. §§ 2261A(2) and 2261(b)(5). See Indictment.

**B. Procedural History**

On September 4, 2025, Mr. Baker was arraigned and entered a plea of not guilty. During a pretrial conference one month later, Mr. Baker was removed from the undersigned's courtroom for disruptive behavior. Upon joint consent of the parties, the Court ordered a forensic psychiatric examination that same day. See ECF No. 12. On November 19, 2025, and January 8, 2026, the Court held a competency hearing.

By order entered January 8, 2026, the Court found that Mr. Baker "is mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense" and committed him to the

custody of the Attorney General "for treatment in a suitable facility of the . . . BOP . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future [he] will attain the capacity . . . to proceed to trial." ECF No. 13 (citing 18 U.S.C. § 4241(d)). Mr. Baker was admitted to the Mental Health Unit of FMC-Butner on April 21, 2026. See ECF No. 22.

On August 31, 2026, the Court received a report from Dr. Brianna Grover, the forensic psychologist who evaluated Mr. Baker, explaining that he began "consistently expressing delusional beliefs that powerful individuals[,] including government officials and corporate leaders[,] were stealing his intellectual property" in 2013. Rep. at 4. Dr. Grover diagnosed Mr. Baker with schizoaffective disorder, bipolar type, see id. at 10, and concluded that he "is . . . not competent to stand trial" but that "there is a substantial probability that [his] competency to stand trial can be restored with appropriate treatment with antipsychotic medication," id. at 12. Since Mr. Baker refused that treatment, Dr. Grover requested that the Court determine whether important governmental interests are at stake in prosecuting Mr. Baker, the first factor the Government must establish for an order

authorizing involuntary medication to restore Mr. Baker's competence to stand trial. See id. at 13.

## II. Discussion

In Sell v. United States, the Supreme Court concluded that "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial" only if (1) a court "find[s] that important governmental interests are at stake," (2) "involuntary medication will significantly further those . . . interests," (3) "involuntary medication is necessary to further those interests," and (4) "administration of the drugs is medically appropriate." 539 U.S. at 180-81 (emphases in original). The Court explained that "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important." Id. at 180 (emphasis added). But "[s]pecial circumstances" in an individual case "may lessen the importance of that interest," including the "potential for [civil] confinement" if the defendant is not prosecuted and the "possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed[)]." Id.

The defense does not dispute that Mr. Baker is charged with a serious crime. See ECF No. 28 ("Def. Submission") at 3. The

seriousness of the crime is demonstrated by the penalty Mr. Baker would face if he were convicted and by the nature and effect of the crime. See United States v. Boima, 114 F.4th 69, 76 (2d Cir. 2024). Mr. Baker faces a statutory maximum term of five years' imprisonment on each of the two counts in the indictment and a Guidelines range of 33 to 41 months' imprisonment.[1] See ECF No. 27 ("Gov't Submission") at 4; United States v. Bloom, 2026 WL 1861947, at *4 (W.D.N.Y. June 29, 2026); Boima, 114 F.4th at 77 (citing United States v. Gillenwater, 749 F.3d 1094, 1101 (9th Cir. 2014)). Moreover, Mr. Baker allegedly made violent and graphic threats against Victim-1 and other government officials, placing "Victim-1 in reasonable fear of death and serious bodily injury and caus[ing] substantial emotional distress." Indictment at 2; see Boima, 114 F.4th at 77 (citing Gillenwater, 749 F.3d at 1101).

The defense argues, however, that special circumstances diminish the Government's interest in this case, so that the Government has not met its burden to show by clear and convincing evidence that it has an important interest at stake. See Def. Submission at 4-5; Boima, 114 F.4th at 75-76. The Court disagrees.

---

[1] The defense contends that Mr. Baker would accept responsibility, such that his Guidelines range is 24 to 30 months' imprisonment. But nothing in the record suggests that Mr. Baker has admitted his conduct or has otherwise expressed accountability. Indeed, Mr. Baker "adamantly denie[s] having a mental illness or needing treatment." Rep. at 3.

To be sure, the crimes alleged against Mr. Baker are "a manifestation of his mental illness," which "diminish[es]" the Government's interest. United States v. Sergentakis, 216 F. Supp. 3d 343, 353 (S.D.N.Y. 2016); see United States v. Weinberg, 743 F. Supp. 2d 234, 237 (W.D.N.Y. 2010). In particular, Dr. Grover reports that Mr. Baker has experienced, since 2013, "delusional beliefs that powerful individuals[,] including government officials and corporate leaders[,] [a]re stealing his intellectual property." Rep. at 4. The fact that Mr. Baker "publicized his ideation in such an open manner with copies" to federal district courts "suggests that his actual intent to commit the act was delusional as well." Weinberg, 743 F. Supp. 2d at 237.

But unlike the other threat cases in this Circuit in which courts have found that the Government has not met its burden of establishing an important interest, the uncertain potential for civil confinement in this case and the period of time Mr. Baker has already served in custody are insufficient to undermine the Government's interest. See id. at 237-38; United States v. Ferretti, 2029 U.S. Dist. LEXIS 112300, at *10-11 (N.D.N.Y. July 6, 2009); United States v. Bloom, 2026 WL 1861947, at *8.

It is uncertain whether Mr. Baker would qualify for civil commitment. See United States v. Gomes, 387 F.3d 157, 161 (2d Cir. 2004). As in Gomes, Dr. Grover reports that "[d]espite his

untreated psychotic symptoms and difficulty maintaining stability on an open mental health unit due to his agitation, [Mr. Baker] did not directly threaten others [in his unit] and complied with direct orders when given." Rep. at 12. "[T]he disorders diagnosed . . . relate specifically to the competency determination and not to the risk of [Mr. Baker] harming other persons or property" if he were released, Gomes, 387 F.3d at 161 (cleaned up); see 18 U.S.C. § 4246(d); Rep. at 13, and "the record contains no evidence of any past violence" on Mr. Baker's part, United States v. Gutierrez, 704 F.3d 442, 450 (5th Cir. 2013); see Rep. at 5.

What is more, although Mr. Baker has been in custody for nearly sixteen months since he was arrested on July 29, 2025, here, unlike in United States v. Weinberg, the sole case the defense cites, Mr. Baker has not "already been in custody well past" his Guidelines range. 743 F. Supp. 2d at 238. His Guidelines range is 33 to 41 months' imprisonment, and even assuming the Court entertained a non-Guidelines sentence, the nature of the crimes strongly suggests that it would impose a sentence well above sixteen months. See Sergentakis, 216 F. Supp. 3d at 353-54. Moreover, in the Government's view, "a sentence could be accompanied by . . . terms of supervised release designed to insulate the victim from further harm," which is "particularly relevant" where, as here, the defendant

"may not be subject to civil confinement" if prosecution is not possible. Id. at 354.

**III. Conclusion**

Thus, on balance, the Government has met its burden of establishing an important interest in prosecuting Mr. Baker. The Court directs BOP to promptly submit a further report on the remaining *Sell* factors and a proposed treatment plan, at which time the parties should jointly telephone chambers to determine a schedule for any further briefing.

SO ORDERED.

New York, NY
November 24, 2026

JED S. RAKOFF, U.S.D.J.